Our third case for this morning is United States v. Gilbert Freeman And you are not Mr. Brindley, I can see that. No, Michael Thompson, Your Honor, good morning. I represent Gilbert Freeman, the appellant on this appeal. Mr. Freeman is appealing the imposition of a sentence in his criminal case based on the district court's determination that he should receive a four-point leadership enhancement under the guidelines, which was based on inherently biased and unreliable statements that were essentially conclusory allegations from co-defendants and other participants in the scheme who had an incentive to minimize their own conduct at the expense of Mr. Freeman. That's almost always the case where the factual finding rests on co-defendants' testimony. It may be, Your Honor, but in this case Mr. Freeman asked for repeatedly and was declined the chance to challenge those allegations through cross-examination, through presentment of those witnesses at court at an evidentiary hearing. There's no requirement that co-defendant statements made for sentencing purposes and considered for sentencing purposes as they were here for purposes of an enhancement have to be corroborated. There is no requirement that they be corroborated. There is a requirement that they be reliable, and in order to find that they're reliable, the district court needs to give the defendant a chance to challenge their reliability, to just conclude that, well, because they said it, it must be true. Well, right. The burden is on the defendant to articulate a challenge if he has one. And he certainly did articulate a challenge but was not able to do anything about that, essentially, because the witnesses weren't presented. Right. What we had was the government presenting plea agreements, presenting grand jury testimony from other participants in the offense. Right, but there's no suggestion that the defendant wasn't in possession of those statements ahead of time and could have anticipated and, in fact, was on notice that they would be used to support this enhancement. Absolutely, and that's why he requested the chance to have those witnesses presented. But what did he think he was going to get? I mean, just somebody suddenly saying, oh, sorry, I was lying before? Certainly that is possible, Your Honor. Or merely through cross-examination, through challenging each of the claims that these people would presumably make. But he didn't, for example, think that he was going to show that somebody was in a different place from where they said they were on a particular day or in some fashion, something concrete. No, Your Honor, but the allegations that were made weren't as concrete as that anyway. The allegations were essentially, I thought I was working for Gilbert Freeman. He was the one that was in charge. They were just the bald opinions of the other participants. There wasn't anything like, on May 31st, he ordered me to do this thing specifically, at least for the most part. They were general conclusions about who they thought was in charge of the scheme that the district court basically just accepted on face value in concluding that Mr. Freeman was a leader of the scheme. The only other fact was... But they do. I'm looking at the Hutchinson grand jury transcript. At one point he says, for instance, Moe and Brett paid me a commission of roughly 30% for the charges I was able to obtain. And he's talking about actual transactions with Brett, right? Yeah, and Brett is a nickname that was apparently used by Mr. Freeman. Right, right. So that's what I'm saying. That strikes me as relatively specific. But that alone isn't enough to establish a basis for a leadership answer, that he's handing out money doesn't establish that he's controlling what happens in the scheme, that he's directing anybody to do anything. That's just him filling a role of paying the participants. Well, I mean, it's obviously a piece of evidence. I wouldn't say you'd hang anything on that. It is. It's certainly a piece of evidence to be considered. It's not on its own sufficient. And neither should be somebody who's just trying to minimize their own conduct, saying that they thought he was in charge. That's essentially what we had here beyond Mr. Freeman's purported share of the profits, which, again, is just another corroborating fact. 50%, though, right? That's the position the government took. And Mr. Freeman was not able to challenge that fact. And that's a factual allegation that essentially the court could have relied upon because Mr. Freeman was not able to challenge it. But a factual allegation is different from an opinion allegation, which is what the rest of these statements basically were, that Mr. Freeman was in charge. Mr. Freeman doesn't have an ability to challenge somebody else's opinion if they're not even presented in court. He can disagree with it, as he did here, but that's the extent of his ability to do without testimony from the people that are making the allegations about their opinions. And because Mr. Freeman wasn't given the chance to challenge those opinions through cross-examination, he was denied his due process right to be sentenced based only on reliable evidence. The reliability couldn't be established without those witnesses being present in court here. But it was pretty clear that these witnesses were involved in the scheme. Absolutely. No one accused them of just being random people who came in. Certainly, and it's because of that that their bias and their, I guess, incentive to implicate Mr. Freeman to try to exculpate themselves at his expense is there. If they were just random people. That may be so, but I think it's also the case that because they certainly are members of the scheme, it's why their perception of who's running things counts. It certainly does count, but that doesn't make it reliable, and that's what's required, that the reliability be established. They're in a position to know, but we don't have to take their word for it, and that's what the court did here, and I think that's a mistake. Okay. Unless there are further questions, I'll reserve my time for a moment. That would be fine. Thank you. Mr. Stetler. May it please the court, my name is Chris Stetler, and I represent the United States. In this case, the district court did not clearly err in finding that the defendant was a leader and organizer of the scheme. I understand that the defense's focus in its brief and here oral argument is on the cooperating co-defendants, but here the abundant evidence that included, but was not limited to, cooperator testimony established that the defendant was clearly the leader and organizer of the scheme. Why don't you review some of that for us, apart from these co-defendants? Yes, Your Honor. So the district court relied on e-mails that were sent by the defendant during the scheme, e-mails sent to the defendant during the scheme. For example, on February 21st of 2011, all these e-mails were attached to the government's version of the offense that were in turn attached to the PSR. So in February 2011, one of the defendant's employees wrote that only the defendant and Mauricio Vega Aguilar, referred to as Moe by the various participants in the scheme, could make decisions on behalf of the organization. You had an e-mail on June 28th of 2012, which was shortly before the defendant was arrested in Las Vegas, where the defendant is sending an e-mail authorizing one of his employees to act on his behalf. He refers to himself as the owner of one of these fraudulent companies. You have an e-mail that the defendant sent to co-schemer Hutchinson on April 27th of 2009, where the defendant is attempting to recruit Mr. Hutchinson back into the scheme, where the defendant refers to him and Moe having six other individuals who are working for them at the time. You have an e-mail on May 27th of 2011, where another one of the defendant's employees refers to the defendant as the head of the operation. You also had the fact that two other non-cooperating defendants testified in the grand jury that the defendant attempted to recruit them into the scheme. That's Andrew Russo and Joseph Turp. You had the defendant's claimed right to the largest share of the proceeds, as Your Honor referred to, and it wasn't just the fact that Moulton and Holton referred to that percentage and Hutchinson, but the government also submitted checks that were obtained pursuant to MLATs in the investigation, and you'll see the split between the defendant and Mr. Aguilar as a 50% split. There was also a reference by Mr. Hutchinson in his plea agreement to the fact that the defendant, at various times in order to stay ahead of law enforcement, would change the company names. In terms of the nature and scope of the illegal activity, again, this is according to non-cooperating defendants. You had Mr. Russo, who testified in the grand jury that the defendant was responsible for fielding complaints from various victims of the scheme who essentially threatened to report the scheme to law enforcement. You had Jim and Cheryl Brown, who maintained one of the defendant's websites, talk about their interactions with the defendant and how he was directing them to put various false information on their websites. So if you have all this, why do you wind up with these sort of vague statements of the sentencing? We think Freeman was the leader. Did you even need them? Did I even need them? Yeah. What did they add? All of it adds color and support. As the district court said, essentially all of the evidence said the same thing, when you boil it down, that the defendant was the head of the scheme. So are you making an argument, maybe you are, that just the fact that as many people said this as did cross-corroborates each person's perception of how this was run? It certainly does corroborate. But as Judge Sykes noted, we don't even have to show that there was corroboration. Any one piece of evidence that was submitted in connection with the sentencing related to the defendant's role would have been enough. But I think especially when you have... So you think it would have been enough if all you had had, clearly, obviously, given what you've just been talking about for the last five minutes, that's not it. But in a hypothetical case, if all you had was just one person saying, yeah, it seemed to me like Freeman was the leader, would that be enough for the enhancement? Maybe not if the individual said it seemed like. I'm not sure if the district court would rely on that. But here, as Your Honor noted, there is much more, and they didn't just say it seemed like it. It was, I worked for this individual, and here's how he directed me during the course of the scheme. Okay. Unless there are any additional questions, we would ask the court to affirm the sentence of the defendant. All right. Seeing none, thank you very much. Anything further, Mr. Thompson? Briefly, Your Honor, I'll address the emails that Mr. Stetler was just mentioning. First of all, without the context of the authors of these emails describing what they were talking about here, it's really just the government's conclusion about what they mean, and that's not sufficient by itself to conclude that Mr. Freeman was a leader. Even if he was actually recruiting people, that alone isn't sufficient to establish that he was a leader. But what about the fact that all of these different items of evidence point in the same direction? That's what I was getting at with my last question. Maybe one, you might have a point, but by the time you have all of this and there isn't anything that points in a different direction, it's just a preponderance of evidence, and the district court's entitled to look at things like emails. It is absolutely just a preponderance of the evidence, Your Honor, but it has to be a preponderance of reliable evidence, and the evidence we had was not reliable. And the fact that Mr. Freeman was acting as the owner of a company doesn't mean he was acting as a leader in the scheme. Somebody has to be the owner of the company. By putting his name on that documentation, he's taking more risks. That by itself could establish a reason that he's getting a bigger share of the profits. That doesn't mean he's leading anybody. Well, we know from his own admissions in the plea agreement that he opened the bank accounts for these phony businesses, and he is the one who obtained the timeshare lists for identifying the potential victims, and he created the website, created all the advertising. It's a totality of all of these facts. And that's him doing work, Your Honor. That's not him directing somebody else to do something on his behalf. That isn't him being a leader. That's him being a doer. It suggests that he's the mastermind and creator of this scheme, and then you couple that with the emails and the statements of the co-defendants, and it all points in the same direction. And those statements of the co-defendants are not reliable, Your Honor. That's the point Mr. Freeman is making is that while they may be suggestive, they're not. Considered with all the rest of the evidence, which, as I said, all points in the same direction to his leadership role, there isn't any reason, and you haven't given us one, to question the reliability of the co-defendant's statements. And, Your Honor, Mr. Freeman's position is that they're inherently unreliable and that they should not have been relied upon therefore. Right. And if we held that, then every statement of a co-defendant that's used for sentencing purposes would be off the table. You're asking for a very aggressive ruling from this court. Maybe we are. Thank you. All right. Thank you so much, Mr. Thompson. Thank you, Mr. Stetler. We'll take the case under advisement.